# In the United States District Court for the Southern District of Georgia Brunswick Division

| | |
|---|---|
| CHRISTOPHER LENNING, | * |
| Plaintiff, | * |
| vs. | * |
| | * 2:10-cv-99 |
| BRANTLEY COUNTY, GEORGIA; | * |
| SHERIFF ROBERT THOMAS; | * |
| GLYNN COUNTY, GEORGIA; | * |
| JOHN SIMPSION, JR.; and | * |
| KEVIN JONES. | * |
| Defendants. | * |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendants Brantley County, Georgia, Sheriff Robert Thomas, Glynn County, Georgia, John Simpson, Jr., and Kevin Jones. (collectively "Defendants"). See Dkt. No.43. For the reasons stated below, Defendants' Motion is **GRANTED**.

## BACKGROUND

The incident at issue took place on June 23, 2008 in Brantley County, Georgia. Sheriff Robert Thomas ("Thomas") was notified that Plaintiff was wielding a firearm in the

1

woods, pointing it at himself and officers before making his way to his residence. Dkt. No. 42-2, 5:18-25 (Thomas dep.). Thomas called the Georgia State Patrol and Glynn County Police Department for support. Id. at 6:2-15.

Deputies from the Brantley County Sheriff's Office maintained the scene until the Glynn County SWAT team ("SWAT") arrived. Id. at 7:18-25. Once SWAT arrived, Brantley deputies secured the outer perimeter while SWAT took over inside the perimeter. Id. at 8: 6-16. Officer Simpson, an investigator with Brantley County Sheriff's Office, testified that he left the scene twice to secure two separate warrants—an arrest warrant and a search warrant. Dkt. No. 42-6, 6:10-15 (Officer Simpson dep.). He secured a felony arrest warrant for aggravated assault on a police officer from Magistrate Judge Jeff Thomas because obtaining a felony arrest warrant is standard protocol before using a SWAT team. Id. at 6:17-23

Plaintiff moved in and out of his residence, yelling at the officers on scene and pointing weapons at them. See Dkt No. 42-1, Exhs. D1, D2, D3, D4. A Georgia State Patrol negotiator attempted to reason with Plaintiff. Id. at Exh. D5 (Officer Tindale report)("I heard the negotiator

speaking with the suspect and asking him to place his weapons down and the suspect refused telling the negotiator that he wanted the deputies to back off."). Officer Jump, the negotiator, testified that Plaintiff showed several emotions and made various requests, including wanting to see his parents, wanting cigarettes, and wanting the officers to turn the headlights off. Dkt. No. 42-4, 17: 9-25; 18: 1-15; 13: 20-24 (Jump dep.). Officer Jump testified, "It was tough to progress with the situation as negotiations. He was standing in a road with a gun pointed at us." Id. at 12: 5-11.

SWAT officers hid in a wooded area near a parked car by the house. Id. at 23: 10-15; Dkt. No. 42-4, Exh. 2. Two officers, Jones and Hogue, were situated in the tree line, Officer Jones lying prone and Officer Hogue kneeling. Dkt. No. 42-1, Exh. D6 .Plaintiff noticed them, and yelled that he could see them and was going to shoot them. Id. Officer Jump attempted to reason with Plaintiff, but Plaintiff refused to drop his weapons. Dkt. No. 42-1, Exh. D3.

According to the report of Officer Melendez, Plaintiff stood up and leaned against a car while pointing his weapon toward the tree line. Dkt. No. 42-1, Exh. D3. He said that

3

Officer Jones notified the other officers via radio that Plaintiff was pointing a gun at him and Officer Hogue and that Capt. Wright asked if he had a "less-than-lethal weapon" with him. According to Melendez, Officer Jones said that he had a taser.[1] Id.;Dkt. No. 42-3, 29: 12-25; 20: 20-25. Capt. Wright testified that he told Jones, "to make sure that they did what they knew they were supposed to do and do what was ever (sic) necessary to contain the situation." Dkt. No. 42-5, 19: 20-22 (Capt. Wright dep.). According to Officer Jones:

> The suspect then pointed his weapon in my direction and leaned his head down as if he was aiming the weapon. It appeared to me as if the suspect was about to shoot. At that instant I was petrified that the suspect would shoot Officer Hogue and me. I am familiar with the wounds a shotgun can inflict at close range and that the weapon does not have to be pointed directly at a person to strike and cause grave bodily injury. I could see the suspects head silhouette in my sight and being in fear for my life and Officer Hogue's life I fired three rounds.

Dkt. No. 42-1, Exh. D6.

---

[1] The distance between Officer Jones and Plaintiff is unclear in the record. Captain Wright testified that although he did not know the exact distance, he thought that Officer Jones was between 25 and 30 feet from Plaintiff. Dkt. No. 42-5, 21: 20-23. Officer Jones testified that, based on the report, he was 57 feet away from Plaintiff. Dkt. No. 42-3, 20: 20-25. He further testified that his taser only works up to 25 feet. Dkt. No. 42-3, 29: 17-25. Plaintiff seems to support the notion that Officer Jones was 57 feet from Plaintiff, because he included this fact in his Brief in Opposition to Defendants Motion for Summary Judgment. Dkt. 45, pg.3.

AO 72A
(Rev. 8/82)

Although Plaintiff's gun was not loaded at the time, Officer Jones did not know this.[2] Dkt. No. 42-3, 30: 10-12. Capt. Wright testified that there is no way to determine whether or not a shotgun is loaded from the angle at which Officer Jones and Officer Hogue were looking at it. Dkt. 42-5, 23: 23-25 (Capt. Wright dep.).

Plaintiff sustained injuries to his left eye, including permanent loss of sight in that eye. Dkt. 1, pg. 2 (Compl.).

Plaintiff testified that he has no recollection of the June 23, 2008 events. Dkt. No. 42-1, 14: 21-24 (Lenning dep.). Through speaking with others, including family members, he gained some understanding of the events. He said his understanding was such that, "I had a gun that I was brandishing, the police came, things got really out of hand, that's really about all I—and I ended up getting shot." Dkt. No. 42-1, 15: 21-25 (Lenning dep.). Plaintiff pled guilty to four counts of aggravated assault of a peace officer and three counts of aggravated assault. Dkt. No. 43-2, Exh. A. Plaintiff is now suing Brantley County,

---

[2] Plaintiff alleges that Officer Jones knew the firearm was unloaded but provides no support for this assertion. Dkt. No. 45, pg. 2.

AO 72A
(Rev. 8/82)

Georgia, Sheriff Robert Thomas, Glynn County, Georgia, John Simpson, Jr. and Kevin Jones. Dkt. No. 1 (Compl.). Plaintiff alleges violations of 42 U.S.C. § 1983, the Fourth Amendment, Fifth Amendment, Sixth Amendment, and Fourteenth Amendment, as well as negligence and failure to intervene. Id.

## LEGAL STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could impact the outcome in a case. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). A dispute is genuine only where the jury could issue a verdict in the nonmoving party's favor. Id. In determining whether summary judgment is appropriate, the Court will view the evidence "in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The moving party bears the burden of showing a lack of genuine issue of material fact. Adickes, 389 U.S. at 157. The movant should do so by identifying "particular parts of materials in the record" which indicate "the absence . . .

of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A). It is only after the moving party has fulfilled this burden that the party opposing summary judgment bears a burden of responding. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmovant will defeat a motion for summary judgment by presenting evidence "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

## DISCUSSION

I. **Constitutional Claims**

**Fourth Amendment Claim**

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. Plaintiff alleges that his arrest violated the Fourth Amendment because no warrant authorized Plaintiff's arrest and because Defendants seized him unreasonably by using excessive force in executing the arrest. Dkt. No. 1, pg. 2-3 (Compl.).

**1) Warrantless Arrest Claim**

Plaintiff's complaint states, "There was no warrant which authorized Plaintiff's arrest" (Dkt. No. 1, pg.2) and Plaintiff's counsel cites authority relating to unlawful

7

arrest.(Dkt. No. 45, pg. 7). However, the undisputed facts show that a warrant was procured. Furthermore, the arrest was legal, with or without a warrant.

It is true that if an officer lacks the right to arrest, he also lacks the right to use force. Bashir v. Rockdale Cnty., Ga., 445 F.3d 1323, 1332 (11th Cir. 2006). However, even without a warrant, the arrest here was legal. Officer Jones clearly had probable cause to believe that Plaintiff had already committed and was continuing to commit a felony. Plaintiff's acts of pointing guns at Officer Jones constituted sufficient probable cause. Thus, with or without the warrant, Defendants did not violate the Fourth Amendment through a warrantless arrest.

**2) Unreasonable Seizure through Excessive Force Claim**

Plaintiff alleges that Defendants subjected him to "unreasonable restraints on his person." Dkt. No. 1, pg.3 (compl.). Plaintiff specifically contends that Officer Jones exercised excessive force by shooting him in the eye. Dkt. No. 45, pg. 7. United States Supreme Court precedent shows that using deadly force against a person constitutes a seizure. Tenn. v. Garner, 471 U.S. 1, 7 (1985)("Whenever an officer restrains the freedom of a person to walk away,

8

he has seized that person."). A shooting does not have to be fatal to constitute a seizure. See Carr v. Tatangelo, 338 F.3d 1259, 1268 (11th Cir. 2003)(noting that the plaintiff was still seized even though he could run after being shot). Plaintiff was clearly seized. The operative Fourth Amendment question, therefore, is whether the seizure was reasonable or whether it constituted excessive force.

The constitutional standard for whether force violated the Fourth Amendment as an unreasonable seizure is that of "objective reasonableness." Long v. Slaton, 508 F.3d 576, 580 (11th Cir. 2007)(citing Graham v. Connor, 490 U.S. 386, 388 (1989). Whether the use of force was reasonable must be determined from the viewpoint of "a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968). The reasonableness determination requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Scott v. Harris, 550 U.S. 372, 383 (2007)(quoting United States v. Place, 462 U.S. 696, 703

(1983)). Important to the determination is that officers frequently must make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." Graham, 490 U.S. at 396-97. The Eleventh Circuit has set forth relevant factors for courts to consider in analyzing whether force was reasonable: 1) severity of the crime; 2) immediacy of the threat to officers; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009).

The Eleventh Circuit has analyzed the use of deadly force by officers in an array of scenarios. In Pace v. Capobianco, the Eleventh Circuit assessed whether police officers acted reasonably when they shot a victim through his car during a high-speed police chase. 283 F.3d 1275, 1277-78 (11th Cir. 2002). The court analyzed whether the victim "would have appeared to reasonable police officers to have been gravely dangerous." Id. at 1281. The court answered this question in the affirmative. Id. The Eleventh Circuit also determined that an officer acted reasonably when he shot an armed robbery suspect fourteen times without warning after the suspect fled by car and on foot.

Jean-Baptiste v. Gutierrez, 627 F.3d 816, 818-19 (11th Cir. 2010). The location of the suspect's gun prior to the shooting was disputed. Id. at 819. Even so, the court considered it determinative that "the suspect was armed and posed a threat of serious physical injury to [the officer] and to citizens in the surrounding residential area." Id. at 821. However, the court affirmed denial of summary judgment against a police officer who shot and paralyzed an unarmed man while in his truck as he exited a park. Morton v. Kirkwood, 707 F.3d 1276, 1279-80 (11th Cir. 2013). The court determined that the officer did not have probable cause to think the plaintiff committed a crime or posed a risk of serious harm to the officer, and therefore no reasonable officer would have used deadly force in this scenario. Id. at 1281-82.

Applying the Oliver factors to the present case and guided by the parameters set forth in this Circuit, it is clear that Officer Jones acted reasonably. First, Officer Jones observed Plaintiff committing an extremely serious offense. Plaintiff pointed a gun at Officer Jones and refused to put down his weapon, even after attempted negotiations. Even Plaintiff has come to understand that he

brandished a gun. Second, by pointing a gun at Officer Jones, Plaintiff posed an immediate threat to officer safety. Finally, Plaintiff actively resisted arrest by moving in and out of his residence and refusing to cooperate with the officers, eventually drawing weapons against the officers in an attempt to avoid arrest. Consequently, all of the Oliver factors lead to the same conclusion: this was a situation in which great force was justified.

Officer Jones recognized the threat posed by Plaintiff and made a "split-second judgment" in a "tense, uncertain, and rapidly evolving" threat situation. Plaintiff notes that Officer Jones did not issue warnings. Dkt. No. 45, pg. 8. However, failure to issue warnings does not preclude a finding of reasonableness. See Jean-Baptiste, 627 F.3d at 819-822 (determining that an officer who did not issue a warning before shooting acted reasonably when confronted with "a suspect of violent crimes who had attempted to elude" the officer and who posed a threat of serious physical injury to the officer and nearby citizens).

Even considering the facts in the light most favorable to Plaintiff, Officer Jones did not act "so obviously wrong."

**Fifth Amendment Claim**

The Fifth Amendment protects against deprivations of life, liberty, and property without due process. U.S. Const. amend. V. Plaintiff alleges that Defendants violated his Fifth Amendment rights by "depriving the Plaintiff of his liberty by subjecting him to unwarranted and unreasonable restraints upon his person without due process in violation of the Plaintiff's right under the Fifth and Fourteenth Amendments to the United States Constitution." Dkt. No. 1, pg. 3. However, the Fifth Amendment only applies to the federal government. <u>Davidson v. City of New Orleans</u>, 96 U.S. 97, 99 (1877)(noting that the Fifth Amendment is "not a restraint upon the States."). Plaintiff does not allege federal government participation. Plaintiff's Fifth Amendment claim therefore fails as a matter of law.

**Sixth Amendment Claim**

The Sixth Amendment provides criminal defendants with certain rights, including the right to a speedy trial by an

13

impartial jury, the right to be confronted with witnesses against them, the right to compulsory process for witnesses, and the right to assistance of counsel. U.S. Const. amend. VI. Plaintiff alleges Sixth Amendment violations. Dkt. No. 1, pg. 3 (Compl.). However, Plaintiff has not provided facts to indicate that Defendants violated Plaintiff's Sixth Amendment rights. Therefore, this claim fails as a matter of law.

**Fourteenth Amendment Claim**

The Fourteenth Amendment prohibits state actors "from depriving a person of life, liberty or property without due process of law." Castle v. Appalachian Tech. Coll., 631 F.3d 1194, 1199 (11th Cir. 2011) (citing U.S. Const. amend. XIV). Plaintiff alleges Fourteenth Amendment violations but does not specify procedural or substantive due process. See Dkt. No. 1, pg. 3 (Compl.). Consequently, the Court addresses both.

**Procedural Due Process**

Plaintiff's procedural due process claim fails because Fourteenth Amendment procedural due process rights do not apply during arrest, but rather, only after the arrest is completed, and pretrial detainment has begun. Townsend v.

14

Coffee Cnty., Ga., 854 F.Supp.2d 1345, 1353-54 (S.D. Ga. 2011)(citing Garrett v. Athens-Clarke Cnty., 378 F.3d 1274, 1279 n. 11 (11th Cir. 2004). Plaintiff does not allege constitutional violations stemming from pretrial detainment. Therefore, Defendants are entitled to judgment on this claim as a matter of law.

**Substantive Due Process**

Substantive due process protects "fundamental" rights that are "implicit in the concept of ordered liberty." McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)(quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)). Defendants are also entitled to judgment on Plaintiff's substantive due process claims. The Fourth Amendment rather than substantive due process applies to the activities surrounding Plaintiff's arrest. See Dkt. No. 43-1, pg. 15. The United States Supreme Court explicitly provided that excessive force during arrest claims should be determined under the Fourth Amendment rather than Fourteenth Amendment:

> [A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a

15

> "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Graham, 490 U.S. at 395.

Freedom from excessive force during arrest is protected by the Fourth Amendment. Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). Because Plaintiff's claims fall under the protective umbrella of the Fourth Amendment, this amendment is the appropriate tool to use. See Townsend, 854 F.Supp.2d at 1354. Consequently, Defendants are entitled to judgment as a matter of law on the substantive due process claim.

**County Liability**

To show § 1983 liability for counties, a plaintiff must prove: 1) a constitutional right was violated; 2) the county had a policy or custom that included deliberate indifference to the constitutional right; and 3) the custom or policy caused the constitutional violation. McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). The U.S. Supreme Court requires that to sue a local government under 42 U.S.C. § 1983, the local government must have executed a

policy or custom that led to the plaintiff's harm. Monell v. Dep't of Soc. Services of N.Y.C, 436 U.S. 658, 694 (1978).

Plaintiff alleges that he suffered from wrongful assault under color of law and authority, that acts against him were intentional and negligent, that they showed deliberate indifference to Plaintiff's rights, and that the County is responsible for its employees' acts. Dkt. No. 1, pg. 3 (Compl.). Plaintiff also contends that SWAT was not properly supervised, that Officer Jones used unreasonable force, and that Glynn County officers were too aggressive. See Dkt. 45. However, Plaintiff does not present evidence sufficient to show that a constitutional right was violated or that either county had a policy or custom of indifference to a constitutional right. This claim fails as a matter of law.

**Respondeat Superior through § 1983**

Plaintiff also argues that Glynn County is liable for the wrongful acts of its employees through a respondeat superior theory. Dkt. No. 1, pg. 3 (Compl.). Plaintiff has failed to show that county employees committed wrongful acts. This claim fails as a matter of law.

17

## State Law Negligence Claim

Plaintiff asserts that Officer Jones's act of shooting Plaintiff was performed negligently. Dkt. No. 1, pg. 2. However, Plaintiff does not allege facts to show that Officer Jones acted negligently. Furthermore, "[u]nder Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure." Cameron v. Lang, 549 S.E.2d 341, 344(Ga. 2001) (citing Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994)). Official immunity applies to discretionary acts that are not performed with malice or intent to injure. Gilbert, 452 S.E.2d at 483. Discretionary acts are those that require "personal deliberation and judgment" whereas ministerial acts are "simple, absolute, and definite . . . requiring merely the execution of a specific duty." Golden v. Vickery, 285 Ga.App. 216, 217-18 (645 S.E.2d 695)(2007). Plaintiff does not allege nor present evidence that Defendant engaged in ministerial acts, or operated with malice or intent to injure. Therefore, Defendant Jones is entitled to official immunity on Plaintiff's state law claims.

18

Failure to Intervene

Plaintiff alleges that Defendants Sheriff Robert Thomas and Officer John Simpson, Jr. are liable for "failing to protect the Plaintiff's Constitutional rights." Dkt. No. 1, pg. 3 (compl.). The Court surmises that Plaintiff's claim against Thomas and Simpson is a claim of failure to intervene while Officer Jones allegedly used excessive force. It is true that an officer may be liable for failing to intervene and protect a victim from another officer's excessive force. Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985). As noted above, however, Officer Jones did not employ excessive force. Therefore, Defendants Thomas and Simpson are not liable for a failure to intervene.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED**. Dkt. No. 43. The Clerk of Court is directed to enter the appropriate judgment.

**SO ORDERED**, this 6th day of February, 2014.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)